# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1296 | **DATE** | 7/29/2004 |
| **CASE TITLE** | Riley vs. Blagojevich | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for judgment on the pleadings is denied with respect to Counts I and II, and granted with respect to Count III. Plaintiff's motion to strike is granted with respect to Defendants' First Affirmative Defense.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN THE DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 1296 |
| | ) | |
| ROD R. BLAGOJEVICH and ROGER WALKER, JR., | ) ) ) | |
| Defendants. | ) | |

**DOCKETED**
**JUL 3 0 2004**

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

After the termination of his employment as Assistant Warden at Tamms Correctional Center, Plaintiff sued Defendants, alleging that Defendants violated his First Amendment rights by removing him because of political affiliation and in retaliation for his criticism of Defendants' administration. Plaintiff also alleges that Defendants violated his due process rights by terminating his employment. Defendants moved for judgment on the pleadings pursuant to Rule 12(c). Plaintiff responded, in part, by moving to strike portions of Defendants' answer. As discussed below, Defendants' motion for judgment on the pleadings is granted in part. Plaintiff's motion to strike is granted in part.

### FACTUAL BACKGROUND

This case is one of ten lawsuits brought by the same counsel on behalf of former Illinois Department of Corrections ("IDOC") officials alleging that they were unlawfully terminated by Defendants.[1] Plaintiff worked for the IDOC for 23 years, most recently as Assistant Warden of

---

[1] The other nine cases are *Bigley v. Blagojevich*, No. 04 C. 937; *Pierson v. Blagojevich*, No. 04 C 939, *Clark v. Blagojevich*, No. 04 C 941; *Snyder v. Blagojevich*, No. 04 C 1291; *Kiddy-*

40

Tamms Correctional Center. Riley's superiors defined the following duties and responsibilities in his position as Assistant Warden: (1) assisting the Warden in daily functions, including security, physical plant operations, dietary services, and inmate discipline; (2) monitoring programs for inmates; (3) supervising, guiding, and training staff; and (4) conducting routine inspection tours. (R. 3-1, First Am. Compl. ¶ 9.)

In addition to these four aspects of Plaintiff's employment, Plaintiff's complaint alleges that he had neither close contact nor highly confidential communications with IDOC policymakers; no autonomous or discretionary authority; no hiring or firing authority; and no budgetary authority. (*Id.* at ¶¶ 20-24.) Further, Plaintiff alleges that he "did not participate in determining policy which fixed objectives, or stated principles to control action toward operating objectives, or toward the conduct of IDOC, and IDOC district, Tamms Correctional Center" or other units under Defendants. (*Id.* at ¶ 25.) Plaintiff alleges that his actions were subject to approval by Defendants and several levels of management. He contends that he did not act authoritatively on any policymaking issue and that he had no meaningful input into governmental decision making. Plaintiff Riley alleges that he did not advise Defendants or formulate plans to implement broad goals and that he did not have broad discretionary policymaking powers. According to Plaintiff, he was constrained by regulations and rules in his employment. (*Id.* at ¶¶ 26-31.)

As an exhibit to its answer, Defendant provided a document on the letterhead of the Illinois Department of Central Management Services entitled "Position Description." This

---

*Brown v. Blagojevich*, No. 04 C 1293; *Pierson v. Blagojevich*, No. 04 C 1296; *Foster v. Blagojevich*, No. 04 C 2069; *Buchheit v. Blagojevich*, No. 04 C 2070; and *Trancoso v. Blagojevich*, No. 04 C 2071.

document purports to offer a "complete, current and accurate statement of position essential functions" for the position of Assistant Warden. (R. 15-1, Answer, Ex. A.) The Position Description describes the duties listed in the Amended Complaint and a few more, including assisting "in the development, establishment and implementation of rules, regulations, directives, policies and procedures of the institution to ensure proper operation of the daily functions;" being "administratively responsible and accountable for execution of policies and procedures in management of the institution;" and planning, organizing, and directing "the overall Operations functions and their managers . . . ." (*Id.*)

Plaintiff contends that Defendants terminated him because he was not a member of the Democratic Party. Additionally, Plaintiff contends that Defendants terminated his employment because he had spoken out on matters of public concern, such as the qualifications of prospective IDOC personnel, third-party interference in IDOC hiring decisions, staffing levels, facility safety, and IDOC reorganization. Finally, Plaintiff contends that Defendants' actions deprived him of his Constitutional right of due process.

**LEGAL STANDARDS**

Rule 12(c) allows a party to move for judgment on the pleadings. A Rule 12(c) motion differs from the various Rule 12(b) motions in that 12(b) motions are brought before the pleadings are closed, and 12(c) motions are brought after. Despite the difference in timing, Rule 12(c) motions are reviewed under the same standards that apply to motions under Rule 12(b). Accordingly, courts should only grant a motion for judgment on the pleadings if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir.

3

1998) (citing *Craigs, Inc. v General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)) (internal quotation omitted). In reviewing the complaint, the court views all facts alleged therein in the light most favorable to the plaintiff. *See GATX Leasing v. Nat'l Union Fire Inc. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995).

## ANALYSIS

### I. Plaintiff's Motion to Strike

Plaintiff moves to strike certain portions of Defendants' Answer to the First Amended Complaint ("Answer") for failure to comply with Rule 8(b) of the Federal Rules of Civil Procedure.[2] Specifically, Plaintiff argues that Defendants' answers to Paragraphs 9, 20-31, and 77 of Plaintiff's complaint violate the requirements of Rule 8(b). Additionally, Plaintiff argues that the Court should strike Exhibit A of the Answer — a description of the duties of Assistant Warden — under Rule 8(b).

Plaintiff builds his argument on the text of Rule 8 and Judge Shadur's pronouncement that the rule "is quite specific in defining the only circumstances under which a pleader can do something other than either admit or deny an allegation . . . ." *Gilbert v. Johnston*, 127 F.R.D.

---

[2] Rule 8(b) states: "A party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, the pleader may make denials as specific denials of designated averments or paragraphs or may generally deny all the averments except such designated averments or paragraphs as the pleader expressly admits; but, when the pleader does so intend to controvert all its averments, including averments of the grounds upon which the court's jurisdiction depends, the pleader may do so by general denial subject to the obligations set forth in Rule 11."

4

145, 146 (N.D. Ill. 1989). While the *Gilbert* opinion emerged from judicial exasperation over defendants' chronic misunderstanding of Rule 8, Defendants' answer does not commit the offense that Judge Shadur recognized. The *Gilbert* opinion deals with answers that gloss over the subtleties of belief, knowledge, information, and strict proof as those topics bear on answers that neither admit nor deny allegations. Indeed, insofar as Defendants provide such an answer (to Paragraph 77), they conform to the *Gilbert* standard.

The text of Rule 8(b) specifically allows a party to "state in short and plain terms the party's defenses to each claim asserted." Despite Plaintiff's attempt to establish a definitive line between claims and averments, the Court declines to strike the cited portions of Defendants' answer, including Exhibit A of the Answer. Plaintiff's argument in favor of striking the exhibit consists mainly of pointing out that Defendants have provided no case law supporting their right to attach documents to the Answer. Nevertheless, the Seventh Circuit clearly contemplates the attachment of documents to answers. *See Northern Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. Plaintiff's motion to strike is therefore denied with respect to Paragraphs 9, 20-31, and 77, and Exhibit A of Defendants' Answer.

Plaintiff also objects to the fact that Defendants have included the following as an affirmative defense: "The Amended Complaint fails to state a claim for which relief can be granted," pointing out that the statement attacks Plaintiff's *prima facie* case and does not raise an affirmative defense. While Defendant points to other courts in the Northern District that have allowed such statements to stand as affirmative defenses, the Court agrees with Judge Bucklo that "[t]his type of allegation is not an affirmative defense which adds substance to the litigation; it is clutter." *Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.*, 213 F.R.D. 307, 308

(N.D. Ill. 2003) (citing *Imperial Constr. Mgmt. Corp. v. Laborers' Int'l Union*, 818 F. Supp. 1179 (N.D. Ill. 1993)). Accordingly, Plaintiff's motion to strike is granted with respect to Defendants' first affirmative defense.

## II. Motion for Judgment on the Pleadings

Defendants have moved for judgment on the pleadings with respect to each of Plaintiff's claims. As a threshold matter, the Court must address the question of what materials it may consider on such a motion. While Plaintiff's motion to strike Exhibit A was unsuccessful, the question remains whether or not the Position Description attached to the Answer is properly considered on a motion for judgment on the pleadings.

"Rule 12(c) permits judgment based on the pleadings alone," which include "the complaint, the answer, and any written instruments attached as exhibits." *Northern Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. The Seventh Circuit has held that documents such as letters and affidavits satisfy the "written instrument" requirement. *Id.* at 453. Accordingly, the Court may consider the Amended Complaint, Defendants' Answer, and Exhibit A in resolving this motion. All materials must be viewed in the light most favorable to the Plaintiff. *See GATX Leasing*, 64 F.3d at 1114.

### A. Count I

Defendants move for judgment with respect to Count I on the grounds that political affiliation is an appropriate requirement for the position of Assistant Warden. "[P]arty affiliation may be an acceptable requirement for some types of government employment. . . . [I]f an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining

6

governmental effectiveness and efficiency." *Branti v. Finkel*, 445 U.S. 507, 517, 100 S. Ct. 1287, 1294 (1980). The Seventh Circuit has articulated the relevant inquiry for this determination in the following terms: "The test is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir. 1996) (citing *Heideman v. Wirsing*, 7 F.3d 659, 662-63 (7th Cir. 1993). Further, a court must examine "the powers inherent in a given office, rather than the actual functions [that] the occupant of that office performed." *Id.* (citing *Heck v. City of Freeport*, 985 F.2d 305, 309 (7th Cir. 1993)). The Court notes, however, that "it is impossible to generalize about the nature of an individual type of position," and that "job responsibilities and duties can vary greatly between different governmental units or even within a governmental unit." *Meeks v. Grimes*, 779 F.2d 417, 421 (7th Cir. 1985).

Plaintiff alleged that he had no policymaking authority as Assistant Warden, and thus argues that political affiliation is an inappropriate requirement for that position. Defendants point to the list of duties in the Position Description to show that policymaking was inherent in the position of Assistant Warden. Unfortunately for Defendants, the Position Description is not fit for this task. Viewed in the light most favorable to Plaintiff, the document does not ensure that Plaintiff "cannot prove any facts that would support his claim for relief," such as evidence that other Assistant Wardens possessed only the limited powers enumerated in Plaintiff's complaint. *Northern Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. Accordingly, Defendants' motion for judgment on the pleadings is denied with respect to Count I.

This result comports with Judge Coar's recent opinion in *Kiddy-Brown v. Blagojevich*, in

7

which the court rejected the same argument by Defendants. No. 04 C 1293, 2004 WL 1375321, *3 (N.D. Ill. June 17, 2004) ("[T]he Court cannot conclude, as a matter of law, that political affiliation is an appropriate requirement for the Warden position."). Responding to Judge Coar's ruling in a supplemental brief before this Court, Defendants argue that the ruling ignored Seventh Circuit precedent in which "as here — the duties of the position were 'easily ascertainable.'" (R. 38-1, Defs.' Supp. Br., p. 3.) Therein lies the weakness of Defendants' argument. Defendants overestimate the clarity with which the Position Statement sets forth the duties of Assistant Warden. The Position Description does not foreclose the possibility that the inherent duties of the Assistant Warden position do not include policymaking. Plaintiff could conceivably present evidence that the inherent duties of an Assistant Warden did not include any involvement in government decision making. At this stage of the litigation, the Court cannot conclude as a matter of law that party affiliation is an appropriate requirement for the position of Assistant Warden.

**B.     Count II**

Plaintiff contends that Defendants terminated his employment because he spoke out on matters of public concern. The free speech rights of a government employee are subject to competing interests which must be weighed in considering a First Amendment claim: (1) the employee's right of expression as an individual; and (2) the government's interest in conducting its affairs effectively. *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734, 20 L. Ed. 2d 811 (1968). The Seventh Circuit, however, has held that the balancing test does not apply to speech by a government employee in a policymaking position. *Vargas-Harrison v. Racine Unified School Dist.*, 272 F.3d 964, 970-71 (7th Cir. 2001). Further, a policymaking

employee can be discharged when that employee "has engaged in speech on a matter of public concern in a manner that is critical of superiors or their stated policies." *Id.* at 971.

Defendants argue that because (1) Plaintiff occupied a policymaking position and (2) Plaintiff affirmatively alleges that he engaged in public speech that was critical of IDOC policies, then under *Vargas-Harrison*, Defendants were justified in ending Plaintiff's employment. As discussed above, however, Defendants have not shown as a matter of law that Plaintiff occupied a policymaking position. Accordingly, Defendants' motion for judgment on the pleadings is denied with respect to Count II.

### C. Qualified Immunity

"Qualified immunity shields from liability government officials who are performing discretionary functions in the course of duty to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (internal quotation omitted). "The cloak of qualified immunity is removed from a government official if the plaintiffs show that the law prohibiting the government official's conduct was 'clearly established.'" *Carlson v. Gorecki*, ___ F.3d ___, 2004 WL 1445440, *4 (7th Cir. June 29, 2004) (citing *Gregorich v. Lund*, 54 F.3d 410, 413 (7th Cir. 1995)). Therefore, to determine qualified immunity, the Court must consider "(1) whether the plaintiff has asserted a violation of a federal constitutional right, and (2) whether constitutional standards implicated were clearly established at the time in question." *Spiegel*, 196 F.3d at 723.

In the *Kiddy-Brown* opinion, Judge Coar cited *Flenner v. Sheahan*, 107 F.3d 459, 463 (7th Cir. 1997) for the proposition that no qualified immunity attaches in cases such as Plaintiff's.

Pointing to existing case law, the Seventh Circuit said, "[t]hese cases made clear that an employee who performs primarily ministerial functions and who has little autonomy or discretion in performing his duties is not subject to patronage dismissal. *Flenner*, 107 F.3d at 463. Viewing the facts in the light most favorable to Plaintiff, he was an employee who performed primarily ministerial functions and who has little autonomy or discretion. Defendants are not entitled, therefore, to judgment on the pleadings with respect to qualified immunity.

### D. Count III

Plaintiff's Count III alleges that Defendants violated his due process rights by terminating his employment as Assistant Warden. Defendants advance several arguments in moving for judgment on the pleadings, including the assertion that Defendant Blagojevich's alleged statements give Plaintiff no entitlement to continued employment.

To prevail on a due process claim, a plaintiff must show: (1) a constitutionally protected property interest; (2) a deprivation of that interest; and (3) insufficient process in connection with the deprivation. *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989). "[I]n the employment context . . . a property interest can be created in one of two ways: (1) by an independent source such as state law securing certain benefits; or (2) by a clearly implied promise of continued employment." *Shlay v. Montgomery*, 802 F.2d 918, 921 (7th Cir. 1986) (citing *Munson v. Friske*, 754 F.2d 683, 692 (7th Cir. 1985)) (quotations omitted). Plaintiff attempts to satisfy the property interest requirement through Paragraphs 70-71 of the Amended Complaint. In those paragraphs, Plaintiffs allege that Defendants were authorized to make IDOC employment decisions pursuant to certain statutes and an executive order, and that Defendant Blagojevich made a promise of continued employment to employees of the State of Illinois.

10

As Judge Shadur warned in his March 9, 2004 opinion in *Snyder v. Blagojevich*, however, Blagojevich did not have the authority to make such a promise to IDOC employees such as Plaintiff. Addressing the issue of promises of continued employment made by government officials, the Seventh Circuit stated, "Even if we accept as true [plaintiff's] contention that the corporation counsel gave him a career contract, it is of no legal consequence. [Plaintiff] cites to no source, and we can find none, which purports to give the corporation counsel the authority to create a career position for a person in [Plaintiff's] situation. Any promise for such a position would, therefore, be unenforceable since it is well-established that a city is generally not legally responsible for acts taken by its officers in excess of their authority. *Shlay v. Montgomery*, 802 F.2d 918, 921 (7th Cir. 1986).

Attempting to establish a basis for such authority, Plaintiff alleges that "Defendants . . . are authorized to make IDOC employment decisions pursuant to 730 ILCS 5/3-2-2, 20 ILCS 5/5-15, 20 ILCS 5/5-20 and 20 ILCS 5/5-645." (R. 3-1, First Am. Compl. ¶ 70.) With respect to these statutory sections, the Court agrees with Judge Shadur's assessment:

> 1. All that the first-cited statute provides is that [I]DOC is administered by the Director of Corrections (Walker), who is appointed by the Governor.
>
> 2. All that the second cited statute does is to create various departments of state government, including [I]DOC.
>
> 3. As for the third-cited section, it specifies that each department has a Director at its head and that the Director (not the Governor), subject to the provisions of the Civil Administrative Code, executes the powers and discharges the duties established by law.
>
> 4. Finally, the last cited statute does nothing more than to provide that each department may obtain "necessary employees."

*Snyder v. Blagojevich*, No. 04 C 1291, March 9, 2004 Order at 2. None of these statutes gives Blagojevich the authority to personally make employment decisions with respect to IDOC employees.

Plaintiff also points to Executive Order Number 1, claiming that this document "mandates that all employment decisions regarding state employment, including IDOC, are to be made by Defendant Blagojevich."[3] As Defendants point out, however, this Order refers to a hiring freeze, not a grant (or seizure) of hiring authority with respect to IDOC employees. Additionally, Plaintiff's invocation of Executive Order Number 1 proves too much — as Judge Shadur explained in connection with Snyder's resort to Article 5, Section 8 of the Illinois Constitution. "If that were to be read as [Plaintiff's] counsel could have it, the Governor would be responsible — and personally liable (!) — for every hiring and firing decision involving any of Illinois' thousands of state employees." *Id.* at 3.

Because he was not authorized to make hiring and firing decisions for the IDOC, any promise of continued employment made by Defendant Blagojevich was made in excess of his authority. Accordingly, Plaintiff may not rely on such a promise to form the basis of his due process claim. Because Plaintiff alleges no other basis for this claim in his Amended Complaint, Plaintiff's due process claim fails. Defendants' motion for judgment on the pleadings is granted

---

[3] The text of Executive Order Number 1 is as follows: "I, Rod R. Blagojevich, Governor of Illinois, order that no agency, department, bureau, board or commission subject to the control or direction of the Governor shall hire any employee or officer, fill any vacancy, create any new position, promote any employee or officer to any position or take any other action which will result in the increase or the maintenance of present levels in State employment or compensation (including benefits) payable in connection with State employment, including personal service contracts. All hiring and promotion are frozen. There will be no exceptions to this Executive Order without the express written permission of my office after submission of appropriate requests to my office." Exec. Order No. 1, Jan. 14, 2003.

with respect to Count III.

## CONCLUSION

Defendants' motion for judgment on the pleadings is denied with respect to Counts I and II, and granted with respect to Count III. Plaintiff's motion to strike portions of Defendants' answer is granted with respect to Defendants' first affirmative defense.

Dated: July 29, 2004    ENTERED

_____
AMY J. ST. EVE
United States District Court Judge